UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MAI NHIA THAO,
        Plaintiff,

v.                                           Case No. 09-C-1158

MIDLAND NATIONAL LIFE INSURANCE
COMPANY,
        Defendant.

## DECISION AND ORDER

Mai Nhia Thao purchased a life insurance policy from Midland National Life Insurance Company ("Midland"). In this action, she alleges that Midland breached certain provisions of the policy relating to "expenses" and "cost of insurance." Before me now are the parties' motions for summary judgment.[1]

Thao's policy is a type of life insurance known as "universal" life insurance. One of the characteristics of universal life is that premiums are not necessarily paid by the insured each month but instead are deducted from a "policy fund" that is composed primarily of premiums paid by the insured in the past along with any interest earned on the policy's investment component. Another characteristic of universal life is that the total amount that is deducted from the policy fund each month is made up of separately identified charges. For example, in the present case, the policy states that the "monthly deduction" from the

---

[1] Also before me is Thao's motion for leave to file an amended complaint. However, the additional counts she seeks to add to her complaint are nothing but alternative legal arguments in support of her ultimate claim that Midland breached the policy. Thus, the motion to amend the complaint will be denied as unnecessary, but I will consider all of Thao's legal arguments in the course of my discussion of the parties' motions for summary judgment.

policy fund will be equal to the "expense amount" plus the "cost of insurance" for the month plus the "rider charge" for the month. See Policy § 7.4, ECF No. 101-3.

Thao's claim involves policy provisions relating to the cost of insurance and the expense amount. Neither of these terms is defined in the policy. However, the policy specifies that the charges associated with such terms will never exceed certain amounts. Regarding the expense amount, the policy states that it will never be more than the "policy expense charge" plus the "unit expense charge." Policy § 7.4.1.[2] The dollar amounts of these latter charges are identified in the schedule of policy benefits that is attached to the policy. As for cost of insurance, the policy states that it will be calculated using a specified formula.[3] One of the variables in this formula is the "cost of insurance rate," and the policy provides that those rates will never be more than the rates shown in a table that appears in the schedule of policy benefits. Policy § 7.7. The rates on this table are organized by age, sex, and "premium class" (which has to do with certain mortality characteristics, such as whether the insured uses tobacco), and then the rates apply per $1,000 of death benefit. Below is an excerpt from that table:

---

[2]Actually, before it is added to the policy expense charge, the unit expense charge is multiplied by the highest death benefit ever in effect divided by 1000, but this detail can be ignored.

[3]The formula is 1. multiplied by the difference between 2. and 3., divided by $1,000, where 1. is the cost of insurance rate, 2. is the insured's death benefit divided by 1.0020598, and 3. is the policy fund after deducting the expense amount and the rider charge. Policy § 7.5.

2

SCHEDULE OF POLICY BENEFITS (CONTINUED)

TABLE OF GUARANTEED COST OF INSURANCE RATES
MAXIMUM MONTHLY COST OF INSURANCE PER $1,000

| Attained Age | MALE Pref Plus Pref NT Non-Tob Plus Non Tobacco | MALE Pref Tobacco Tobacco | FEMALE Pref Plus Pref NT Non-Tob Plus Non Tobacco | FEMALE Pref Tobacco Tobacco |
|---|---|---|---|---|
| 0 | 0.08 | 0.00 | 0.04 | 0.00 |
| 1 | 0.05 | 0.00 | 0.03 | 0.00 |
| 2 | 0.03 | 0.00 | 0.02 | 0.00 |
| 3 | 0.02 | 0.00 | 0.02 | 0.00 |
| 4 | 0.02 | 0.00 | 0.02 | 0.00 |
| 5 | 0.02 | 0.00 | 0.02 | 0.00 |
| 6 | 0.02 | 0.00 | 0.02 | 0.00 |
| 7 | 0.02 | 0.00 | 0.02 | 0.00 |
| 8 | 0.02 | 0.00 | 0.02 | 0.00 |
| 9 | 0.02 | 0.00 | 0.02 | 0.00 |
| 10 | 0.02 | 0.00 | 0.02 | 0.00 |

ECF No. 101-3 at Bates MNTHAO-37.

In addition to stating that cost-of-insurance rates will never be more than the specified guaranteed maximums, the policy states that such rates are "based on the Issue Age, completed Policy Years, Sex, Specified Amount, and Premium Class of the Insured." Policy § 7.7. (The "issue age" is the insured's age at the time the policy was issued. "Completed policy years" is the number of years the policy has been in force. Sex is the insured's gender. "Specified amount" is the amount of the death benefit, which in this case is $100,000. And, as I have said, "premium class" refers to certain characteristics that affect the insured's mortality risk, such as tobacco use.) The dispute in this case centers on the meaning of this language, which I will refer to as the "based on" provision.

Thao contends that the based-on provision requires Midland to calculate its "current" cost-of-insurance rates—i.e., the rates that are actually plugged into the cost-of-insurance formula each month, as opposed to the guaranteed maximum rates—pursuant to a certain methodology. Thao does not offer a comprehensive description of this methodology. However, she argues that the methodology required Midland to consider only the five listed

3

factors, which are commonly associated with "mortality," when setting its rates. Thao contends that, contrary to this requirement, Midland considered its "expenses" when setting its cost-of-insurance rates. Thao also contends that these "expenses" should have been considered only in connection with the "expense amount." Thao argues that because Midland already deducts the maximum "expense amount" from her policy fund each month, Midland's having factored "expenses" into the cost of insurance resulted in a breach of the expense-amount provision in addition to the based-on provision.

Midland concedes that it considered more than just the five factors mentioned in the policy language, or "mortality," when setting its current cost-of-insurance rates. Indeed, Midland states that its rate-setting process did not involve an explicit consideration of any finite list of "factors" or "components;" rather, its rates were set only after its actuarial department tested various rate scales using computer models that were designed to take into account all of the expected costs and risks associated with issuing the policy. However, Midland contends that this fact did not result in a breach of the based-on provision because that provision does not impose any constraints on the process Midland uses to set its cost-of-insurance rates. According to Midland, the based-on language refers to the fact that Midland's current cost-of-insurance rates are <u>organized</u> by issue age, policy year, sex, specified amount, and premium class—much like the table of guaranteed maximum rates reproduced above is organized by age, sex, and premium class. To determine which current rate applies to an insured in a given month, Midland finds the rate on the current cost-of-insurance table that corresponds to the insured's issue age, the current policy year, the insured's sex, the specified amount in effect at the time, and the insured's premium class. That rate is then plugged into the cost-of-insurance formula to

determine the cost of insurance for the month. Thus, argues Midland, its current rates are "based on" the five mortality factors (and only those factors) even though those factors were not the only factors that Midland considered during the rate-setting process.

Undoubtedly, Midland's construction of the based-on provision is a reasonable one. If a shipping company informed a customer that its rates were "based on" the size, weight, and destination of a package, the customer would understand that what the company meant is that it has a pricing schedule that is organized by size, weight, and destination—not that the company considered only size, weight and destination when setting the rates that appear on the schedule. The customer would understand that the shipper had to consider a wide range of factors when setting its rates, such as the cost of fuel, employee salaries, competitor's prices, and the need to earn a profit. Thao does not dispute this. However, she argues that the nature of universal life insurance requires that more be read into the based-on provision of her policy. She argues that the separately identified charges in a universal life policy—i.e., the "expense amount," the "cost of insurance," and other charges—are usually tied or linked to specific risks or costs that are internal to the insurance company. So, for example, Thao contends that the "expense amount" must be tied to Midland's "expenses," and that the "cost of insurance" must be tied to the cost to Midland of taking on a "mortality risk."

It may be the case that Thao's description of the general nature of universal life insurance is accurate. Perhaps the "expense amount" is traditionally designed to compensate the insurer for its expenses and the "cost of insurance" is traditionally designed to compensate the insurer for the risk of paying the death benefit upon the insured's death. Yet there is absolutely nothing in the language of Thao's policy stating

5

that there must be some precise relationship between each of the separately identified policy deductions and some specific entry or set of entries in Midland's accounting journals or financial statements. Instead, the policy simply attaches a label to each of the charges that make up the monthly deduction, identifies certain formulas that apply when calculating each charge, and then states that the charges will never exceed certain guaranteed maximums.

To be sure, there is a provision in the policy indicating that <u>changes</u> to the separately identified deductions from the policy fund will be related to certain "elements" that are internal to Midland. That provision states that "[c]hanges in the Cost of Insurance Rates, Expense Amount, [and other deductions and credits] will be based on changes in future expectations for such elements as investment earnings, mortality, persistency, and expenses." Policy § 7.8. However, this provision does not tie any specific deduction to any specific element. Thus, although "mortality" is listed as an element that may form the basis for a change in cost-of-insurance rates, it is not the only element. "Investment earnings," "persistency," and "expenses" may also be considered, and indeed the use of the phrase "such elements as" makes clear that Midland is also permitted to consider other, unspecified elements when deciding whether a change in rates is needed. If anything, then, this provision reinforces Midland's interpretation of the policy language—it indicates that each separately identified charge is not contractually tethered to any specific cost or expense that is internal to Midland.

Moreover, even if it were reasonable to read into the policy a requirement that "cost of insurance" be tied to "mortality," the record reveals that Midland's cost-of-insurance rates would satisfy such a requirement: the table of guaranteed maximum cost-of-insurance

6

rates is an industry-standard mortality table.  See Nov. 26, 2012 Decl. of J. Bill ¶ 6, ECF No. 114.  Thus, if Midland had simply plugged the applicable guaranteed maximum rate into its cost-of-insurance formula each month, the result would be a cost-of-insurance charge that reflects a mortality risk.  Since Midland's current cost-of-insurance rates are less than the guaranteed maximums, its current rates cannot in any reasonable sense be thought to exceed an amount that reflects a mortality risk.  Although Thao seems to contend that Midland's using an industry-standard mortality table for its current as opposed to its guaranteed maximum rates would not satisfy her requirement that such rates be tied to mortality—she seems to contend that current rates must be based on "an analysis of [Midland's] actual mortality experience in light of its underwriting criteria," Pl.'s Resp. Br. at 22, ECF No. 112—she points to nothing in the policy language that would support this contention.  She seems to have pulled it out of thin air.

As noted, Thao also argues that Midland improperly factored "expenses" that belong in the "expense amount" into its cost-of-insurance rates.  What I have said so far applies to this argument, as well—the policy does not tie the "expense amount" to any specific expense or to Midland's expenses in general, and so the "expense amount" cannot be reasonably construed as a limit on how Midland may factor its internal expenses into the monthly deduction.  Indeed, the policy does not even define "expense" or provide any criteria for distinguishing between the items that must be factored into the "expense amount" and those that may be factored into the cost of insurance and other charges.

In sum, Midland's interpretation is the only reasonable interpretation of the policy language.  Therefore, that interpretation controls.  See, e.g., Johnson Controls, Inc. v. London Market, 325 Wis.2d 176, 190 (2010) (when policy language is susceptible to only

7

Case 2:09-cv-01158-LA    Filed 01/09/13    Page 7 of 9    Document 120

one reasonable construction, the court applies that construction).[4] Thao's motion for summary judgment will be denied, and Midland's motion for summary judgment will be granted.[5]

Before concluding, I note that Thao has filed a motion for reconsideration of my decision to deny her motion to compel and my order requiring her to pay the reasonable expenses that Midland incurred in opposing the motion, including attorneys' fees, pursuant to Federal Rule of Civil Procedure 37(a)(5)(B). I have considered all of the arguments Thao makes in her motion for reconsideration and see no basis for reconsideration. Therefore, the motion will be denied.

## CONCLUSION

For the reasons stated, **IT IS ORDERED** that Midland's motion for summary judgment (ECF No. 97) is **GRANTED** and that Thao's motion for summary judgment (ECF No. 108) is **DENIED**.

**IT IS FURTHER ORDERED** that Thao's motion for leave to file an amended complaint (ECF No. 91) is **DENIED**.

**IT IS FURTHER ORDERED** that Thao's motion for reconsideration (ECF No. 96) is **DENIED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter final judgment.

---

[4]The parties agree that the policy must be interpreted in accordance with Wisconsin law.

[5]The parties have cited a number of non-binding (and mostly unpublished) cases in support of their arguments. Those cases deal with policies having language that is similar in certain respects to the language at issue in the present case. However, each case either is distinguishable or does not contain reasoning that I find persuasive. Thus, I see no reason to add an extensive discussion of those cases to this opinion.

8

Dated at Milwaukee, Wisconsin, this 9th day of January, 2013.

          s/ Lynn Adelman
          _____
          LYNN ADELMAN
          District Judge